[Civ. No. 26208.   Second Dist., Div. Three.   Apr. 19, 1963.]

In re WALTER C. McGOWAN, a Minor. MARGARET S. LLOYD, Plaintiff and Appellant, v. THE SUPERIOR COURT OF SAN LUIS OBISPO COUNTY, Defendant and Respondent.

Margaret S. Lloyd, in pro. per., for Plaintiff and Appellant.

Stanley Mosk, Attorney General, and William E. James, Assistant Attorney General, for Defendant and Respondent.

SHINN, P. J.—Appeals by Margaret Lloyd, mother of Walter Carroll McGowan, a person under 21 years of age, from orders of the Superior Court of San Luis Obispo County sitting as a juvenile court.  The first order appealed from was entered February 8, 1961, following the hearing on February 3, 1961.  This order accepted a transfer of the proceeding from the County of Santa Barbara and directed that the minor reside in the home of Mr. and Mrs. Ralph W. Steele pending foster home placement.  The second order was made May 2, 1961, committing the minor to the care and custody of the county probation officer and directing that he

be detained in the home of Mr. and Mrs. Barclay of Atascadero until further order of the court.

The record on appeal consists of the reporter's transcript of the proceedings on February 3 and the superior court file which was ordered lodged with this court in lieu of a clerk's transcript. The file shows that upon petition of his father the minor was made a ward of the Juvenile Court of Santa Barbara County February 5, 1951 and that in September of that year he was released to his parents. The present wardship was instituted upon petition of the mother of the minor and was created by order of March 18, 1957, by which the minor was made a ward of the juvenile court. In January 1961 there was pending in Santa Barbara County a petition by the probation officer alleging that the minor had left the home in which he had been placed and seeking an order that he be placed in the juvenile hall pending transfer of the proceeding to San Luis Obispo County. January 16 the proceeding was transferred to San Luis Obispo County and the hearing upon the pending petition was set for February 3.

Mrs. Lloyd appeared and testified in the hearing. She contends in her brief that she had intended on February 3 to move the court to terminate the wardship of the minor and order him returned to her custody but that she had no opportunity to make the motions. However, the proceeding was conducted as if such motions were before the court. Appellant contends that the rulings of the court were based primarily upon the report of the probation officer which had been made at the request of the court; that she was given no copy of the report and was afforded no opportunity to controvert the statements in the report which were the basis of the recommendation of the probation officer that the minor be retained as a ward of the court. Appellant has lodged with the clerk of this court numerous letters attesting to her good character and she seeks to produce other evidence as to the merits of her claim that the proceedings be terminated and that the minor be restored to her custody.

The probation report consists of a résumé of the numerous proceedings that have been had in Santa Barbara County and it stated the results of an investigation made after the order of transfer from Santa Barbara County. It discloses that Mrs. Lloyd had been interviewed and that interviews had been had with three persons she had furnished as references. There are three other children, Terry, age 17, Duncan, age 14 and Deryl, age 8. Terry is residing with his maternal grand-

mother in Santa Barbara; Duncan resides in a foster home in Oakdale; and Deryl resides with his mother. The report of the probation officer consists of five closely typed pages and is comprehensive. No good purpose would be served by summarizing the statements of the report. The important facts concerned the conditions in the home of Mrs. Lloyd and her activities. She was attending Cal-State Polytechnic School and was engaged in the study of electronics. The deputy probation officer was in attendance at the hearing and was questioned by the court. Also present was a member of the county welfare department who was also questioned. In the questioning of Mrs. Lloyd the court read extensively from the probation report. Mrs. Lloyd explained at length statements of the report concerning which the court had questioned her. She made no request for an opportunity to present other evidence. In fact, in the questioning by the court Mrs. Lloyd confirmed the statements of the report as to the conditions under which she was living.

After the March 2 order was made Mrs. Lloyd gave notice of a motion for the disqualification of Judge Lyon, claiming he was biased against her; the matter of his disqualification was submitted to Judge Gordon Campbell, assigned for that purpose, and Judge Campbell made comprehensive findings in an order declaring that Judge Lyon was not disqualified. After a review of the record that was before Judge Lyon, Judge Campbell's order stated in part: "The Probation Officer's reports and the complete file in this case give ample grounds for the most impartial and fair-minded Judge to have arrived at the same conclusion Judge Lyon arrived at. . . . The array of evidence compelled a conclusion adverse to Mrs. Lloyd. The evidence, rather than a claimed bias, prejudice or disability, brought about the decision rendered by Judge Lyon."

We do not believe that appellant was deprived of a fair hearing before Judge Lyon. It is true that she was unprepared to introduce evidence other than her own testimony but it appears that the material facts were those which she admitted. She was living in the sort of unconventional association which neighbors look upon with raised eyebrows and discuss over their back fences. While Mrs. Lloyd justifies the arrangement as purely platonic, and as one that is likely to lead to marriage, she is an intelligent woman and must understand that two judges have found that the conditions in her home would furnish unsuitable surroundings for the minor

child and she must realize that she must remedy those living conditions if she hopes to convince the courts that the welfare of Walter requires that he be restored to her custody.

Insofar as the order of May 2, directing that the minor be placed in the custody of the probation officer, is concerned, it has become moot. Insofar as it directed that the minor live with Mr. and Mrs. Barclay, it was without doubt a proper order under the circumstances. The application to produce evidence before this court is denied.

The purported appeal on behalf of Walter is dismissed; the orders are affirmed.

Ford, J., and Files, J., concurred.